## 28661. ROBINSON v. ASHMORE et al.

GUNTER, Justice.

This case involves the intractable issue of child-custody.

Appellant and her former husband were divorced in 1969. The divorce judgment awarded custody of their minor child to the child's paternal grandparents and provided for visitation rights for the appellant. In 1973 the appellant brought this action in the nature of habeas corpus in the Superior Court of Bibb County seeking custody of her child. Her complaint alleged that changed conditions and circumstances since the original judgment

warranted the change of custody.

The trial judge transferred the case to the juvenile court pursuant to Code Ann. § 24A-301 (c) which provides: "Where custody is the subject of controversy, except in those cases where the law now gives the superior courts exclusive jurisdiction . . . the juvenile court shall have concurrent jurisdiction to hear and determine the issue of custody and support when the issue is transferred by proper order of the superior court."

The appellees filed their motion for summary judgment which essentially contended that there had been no changed conditions or circumstances affecting the welfare of the child since the original custody judgment, that there was no factual issue for determination, and that they were entitled to a judgment in their favor as a matter of law. The juvenile court judge granted summary judgment for the appellees, and appellant has come directly from the juvenile court to this court seeking review.

## I.

This case is an action in the nature of habeas corpus. Therefore, it was properly transferred by order of the superior court to the juvenile court pursuant to Code Ann. § 24A-301 (c). The superior courts have exclusive jurisdiction in cases of divorce (Code Ann. § 2-3901), and when a child custody controversy is decided in a divorce case pursuant to Code Ann. § 30-127, the question of custody can not be transferred to a juvenile court. However, the superior courts do not have exclusive jurisdiction in habeas corpus actions or actions in the nature of habeas corpus. See Code § 50-103 and *Fortson v. Fortson,* 200 Ga. 116 (35 SE2d 896) (1945). We find that there was no legal prohibition to the transfer of this case by order of the superior court to the juvenile court.

## II.

We now come to the question of res judicata in child custody cases. It is clear that a prior final judgment had awarded custody of the child in this case to the appellees, the paternal grandparents, with visitation rights accorded to the appellant, the natural mother of the child.

Code § 50-121 provides: "In all writs of habeas corpus

sued out on account of the detention of a . . . child, the court, on hearing all the facts, may exercise his discretion as to whom the custody of such . . . child shall be given, and shall have power to give such custody of a child to a third person." This statute has been interpreted by this court to mean that even in the face of a former judgment awarding custody that has become final, a habeas corpus court is authorized to change the custody of a child if changed conditions affecting the welfare of the child have come about since the rendition of the former judgment. In *Williams v. Crosby,* 118 Ga. 296 (45 SE 282) (1903), this court said: "The [divorce] decree is a final adjudication as to the status of the parties to the divorce proceedings, but the jurisdiction of a habeas corpus court over the custody of the child is continuing. In the nature of things this must be so. The capacity, ability, or fitness of the party to whom the child was awarded in the divorce proceedings may thereafter become entirely different. The care and protection which the law affords the child is not limited to the date of the decree. Under the Civil Code, §§ 2452-3, the court has jurisdiction at any time to award the custody of the child as its best interests may demand." Thus it is seen that the principle of res judicata is quite different in child custody cases from its application in other cases.

The real crux of the problem is this: What are "changed conditions affecting the welfare of a child" that will warrant a change in custody different from that awarded by a former final judgment?

After reviewing many cases decided by this court on this subject, and in an attempt to establish some semblance of order in this area of the law, we have concluded that a rule must be set forth that the habeas corpus courts can hopefully follow.

Changed conditions affecting the welfare of a child occurring after the rendition of a former final custody judgment which will warrant the issuance of a new judgment by a habeas corpus court effecting a change of custody or visitation rights is essentially a fact issue in each individual case which must be decided by the habeas corpus court. And if there is "reasonable evidence" in the record to support the decision made by the habeas corpus

court in changing custody or visitation rights, then the decision of the habeas corpus court must prevail as a final judgment, and it will be affirmed on appeal.

### III.

Appellant has specifically requested this court to review and overrule the case of *Young v. Pearce,* 212 Ga. 722 (95 SE2d 671) (1956), the implication of this request being that *Young v. Pearce* is being interpreted to mean that "changed conditions" in the status of a natural parent, alone and without other and additional changed circumstances, is always insufficient as a matter of law to warrant a new judgment changing custody or visitation rights. While the judgment of the juvenile court in this case awarding summary judgment in favor of the appellees as a matter of law does not state the reason or basis for its rendition, the appellant in her brief infers that judgment as a matter of law was rendered for the appellees because of this interpretation of *Young v. Pearce,* supra.

This court's holding in *Young v. Pearce* was as follows: "The undisputed evidence in this case shows that the grandmother is a fit and proper person to have custody of the child, and that the child is being well provided for, is being sent to school and to church, and is being reared under excellent physical and moral conditions. The evidence offered by the mother was to the effect that she is in better condition to take care of the child now than when custody was originally awarded, and that she and her husband are financially and otherwise capable of taking care of the child. These facts do not show a change in conditions and circumstances materially affecting the interest and welfare of the child, and there was no error in denying the prayers of the petition." Id., Hn. 4.

*Young v. Pearce* should not be read as meaning that the evidence submitted in that case *precluded* consideration of the out-of-custody parent's "changed conditions" as a matter of law. While we decline to overrule *Young v. Pearce,* we emphasize that any consideration of custody must always be made in the light of the best interests of the child involved. Therefore, where the out-of-custody parent's conditions have

changed to the extent that the best interests of the child would be materially affected, then evidence should be admitted to show the effect of the change on the child even though no change of condition of the custodian has been shown.

In *Handley v. Handley,* 204 Ga. 57, 59 (48 SE2d 827) (1948), this court said: "A change of circumstances that would render a prior judgment inconclusive is not necessarily limited to a change in the moral or financial condition of the parent to whom the initial award was made, but includes *any* new and material change in the circumstances of either parent or of the children which might substantially affect the health, happiness, or welfare of the children." (Emphasis supplied.) We consider the rule stated in *Handley* to be merely expansive of the rule stated in *Young v. Pearce. Young* should be read to hold that a showing of changed conditions of an out-of-custody parent, without a showing of its material effect on the child, is insufficient to warrant a change in custody.

## IV.

The evidence in this case showed changed conditions with respect to the age of the child since the rendition of the former judgment; it showed changed conditions with respect to the age of the grandparents and their relationship toward the child since the rendition of the former judgment; it showed changed conditions with respect to the financial status, the marital status, and the maturity status of the appellant since the rendition of the former judgment; and it showed changed conditions with respect to the attitude of the child toward her paternal grandparents and her natural mother since the rendition of the former judgment. All of these evidentiary circumstances created a question of fact for determination by the trial judge, and it was error for him to render a summary judgment in this case. It was incumbent upon the trial judge in this case to hear evidence with respect to changed conditions and render a decision based upon his discretion and good judgment as he viewed the evidence, giving primary consideration to the welfare of the child. In any event, it was erroneous for him to grant a motion for summary judgment in favor

of the appellees.

*Judgment reversed. All the Justices concur, except Grice, C. J., who concurs specially.*

ARGUED MARCH 11, 1974 — DECIDED JULY 9, 1974.

*Byrd, Groover & Buford, Denmark Groover, Jr.,* for appellant.

*Harris, Watkins, Taylor & Davis, T. Reese Watkins, Adams, O'Neal, Hemingway & Kaplan, H. T. O'Neal, Jr., Kice H. Stone,* for appellees.

GRICE, Chief Justice, concurring specially.

While I concur in the judgment reversing the grant of the appellees' motion for summary judgment, I disagree with much that is said in the majority opinion, and deem it necessary to state the basis for my disagreement.

1. As to the summary judgment, the appellees, in my view, have not laid to rest all factual questions which may be pertinent to a determination of the question of custody.

Although I do not agree that all of the grounds relied upon by the appellees show changed conditions, as required by law, the following at least raise an issue so as to preclude summary judgment.

The deposition of the mother, insofar as necessary here, recited that whenever she and the child visited, "we had a terrible, awful, heartbreaking scene . . ."; that this was having a very traumatic effect upon the child; and that the child wanted to live with her and complained because she did not live with her mother and father as did her friends.

It was also recited that after her remarriage the mother had not been allowed to see the child because of the continuing refusal on the part of the grandparents to let her exercise her visitation rights under the custody arrangement.

The cause and the effect of this emotional condition of the child and of the deprivation of visitation rights must be resolved by the trior of the facts, and is not so

resolved by summary judgment in the present posture.

Therefore the grandparents were not entitled to a judgment as a matter of law, and for this reason I agree that the judgment should be reversed.

2. However, I strongly disagree with the majority as to a "rule" that would permit the unlimited and unrestricted application to courts for change of custody and the unbridled authority to change custody upon the basis of "reasonable evidence" (whatever that means) appealing to the particular judge to whom the matter is presented.

This amounts to no rule at all. It is too vague and indefinite for application.

Any possible merit in it is clearly outweighed by a sound and abiding principle of law that provides a basis of stability for the child and also for the custodian.

Somewhere between this case-to-case rule proposed in every case, on the one hand, and the rigid application of the doctrine of "res judicata," on the other, lies a broad and sound principle of law by which justice can be administered by capable judges and prior judicial decrees made secure by previous decisions of this court.

This court has time and again expounded the principle. It has been applied, and must be applied in the future, to divergent factual situations for which no hard and fast *rule* can be formulated.

"The award of custody of a child of the parties in a divorce decree is conclusive unless there have been subsequently to the decree new and material changes in the conditions and circumstances substantially affecting the interest and welfare of the child. [Citations.]" *Young v. Young,* 216 Ga. 521, 522 (118 SE2d 82).

Also, "Though the trial judge is given a discretion, he is restricted to the evidence and is unauthorized to change the custody where there is no evidence to show new and material conditions that affect the welfare of the child." Ibid.

Thus, when a court of competent jurisdiction has heard the evidence and has pronounced judgment in a formal decree, the rights and duties of the child, the custodian, the parents, and any other interested party are fixed. And they remain fixed and certain unless and

until some change in circumstances subsequent thereto so clearly affects the welfare of the child that a change in custody is required. Any such change is to be made only if it meets the standards fixed and the general principles established in prior decisions of this court constituting valid grounds for a change. To act otherwise would produce, not clarity, but confusion.

This leaves ample room, within the framework of the law, to protect and preserve the rights of the child and others properly concerned.

To rigidly apply to every case the doctrine of res judicata would unduly restrict the courts of the continual oversight of the welfare of the child.

On the other hand, to remove established standards and to fail to give due recognition to prior judicial determinations would multiply litigation, leave trial judges without guidance and would hamper this court in its duty to provide certainty and continuity to the law.

These prior decisions determine whether evidence of specific events or situations are sufficient grounds to change custody in the light of controlling principles of law heretofore correctly followed by this court. A comprehensive collection of the cases on this subject appears in "Georgia Law of Children," by Stubbs, pp. 250-260, § 120. See also West, Georgia Digest, Divorce, § 303 (2).

Approximately 24 years ago this court said in *Ehlers v. Ehlers,* 206 Ga. 297 (57 SE2d 83): "There has been *no legal definition* of the new or changed condition necessary to warrant a change of custody, . . ." (Emphasis supplied.)

Today no *rule* can be fashioned that will cover all of the specific factual situations that continually occur in change of custody cases. But we do have the principle stated in the *Young* case, 216 Ga. 521, supra, and the decisions that have applied it to factual situations so as to establish standards for valid grounds of change of custody.

This court should not propound a variable, undetermined rule that will allow random application for and change of custody. There must be some firm and established principles of general law to serve as a guide

and to preserve a predictable justice and an orderly functioning of our judicial system.

The action of the majority in this regard, although well intended, is in my view a mistake. It is my hope that upon further consideration this will become apparent and corrective action will be taken.